IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANGELA BROWN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO. 2:09-cv-901-MEF |
| v. | ) | |
| | ) | (WO) |
| RONNIE BENEFIELD, *et al.*, | ) | |
| | ) | [PUBLISH] |
| Defendants. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART THE JOINT MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

This cause is before the Court on the Defendants' Joint Motion to Dismiss the Second Amended Complaint (Doc. #53). Plaintiffs Angela Brown, Marcus Brown, and two minors T.B., and Z.W. (collectively, the Plaintiffs) sued Defendants Ronnie Benefield, R.C. Covington, Eddie Ingram, and Corey Mason (collectively, the Defendants) alleging violations of the Civil Rights Act of 1964, 42 U.S.C. § 1983, as well as supplemental state law claims of trespass, assault and battery, and invasion of privacy. The Plaintiffs amended their complaint twice, and the Defendants filed a Joint Motion to Dismiss Plaintiffs' Second Amended Complaint. (Docs. #14; #50; #53). After careful consideration of the record, the Court finds that the motion to dismiss is due to be granted in part and denied in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case is about a search and seizure conducted at the Plaintiffs' residence by members of the Barbour County Sheriff's Office. The complaint contains detailed factual

allegations regarding the actual search and seizure at the Plaintiffs' residence.  In addition, the complaint refers to portions of the search warrant and supporting affidavit.  (Doc. #53, 4, 5, 8).   Ordinarily, because the warrant and affidavit were not attached to the complaint, they would not be considered for purposes of a Rule 12(b)(6) motion to dismiss because "the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto."  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997) (per curiam).   In this case, however, the Court is free to consider the supporting affidavit and warrant, even in the context of a motion to dismiss, because the Plaintiffs refer to these documents in the complaint and these documents are central to their claims.[1]  *Id*. at 1369.  Consequently, the Court will consider these documents when deciding this  motion to dismiss.

The following facts are taken from the complaint, the warrant, and the supporting affidavit. At all times relevant to these proceedings, the Defendants were deputies in the Barbour County Sheriff's Office.  On December 5, 2008, Deputy Mason presented Barbour

---

[1] In fact, after the Plaintiffs referred to these document in their complaint, the Defendants attached copies of the supporting affidavit and the search warrant to their Memorandum in Support of the Joint Motion to Dismiss and argued for their consideration. (Docs. #54-1; #54-2).  The Plaintiffs then attached these documents to their Response in Opposition to the Defendants' Joint Motion to Dismiss. (Docs. #60-1; #60-2).  Instead of arguing against their use, the Plaintiffs rely upon the warrant and supporting affidavit to argue that the Defendants did not have probable cause to search the Plaintiffs' residence and that the warrant did not satisfy the particularity requirements of the Fourth Amendment. (Doc. #60, 11-12, 16). All references to the warrant and affidavit in this Order will refer to the versions submitted by the Plaintiffs.

County Circuit Judge Burt Smithart with a signed affidavit for a search warrant.

In the affidavit, Deputy Mason stated that he had "probable cause for believing and does believe that marihuana and cocaine . . . is now being kept" at a residence on Doster Spur Road in Barbour County. (Doc. #60-2, 1). The affidavit describes the residence to be searched as "possibly" Adrian Johnson's and "possibly, 127 Doster Spur Road, Ariton, Barbour County, AL." (*Id.*). It then describes the residence as the "last trailer on the right as you travel on Doster Spur Road" after turning onto Doster Spur Road from Doster Road. (*Id.*). The residence is further described in the affidavit as a:

> . . . single wide trailer, white or off white in color. The trailer faces back towards Doster Road. There is a set of wooden steps that lead to the front door. There is a storm door in front of the front door. There is a window air conditioning unit in the last window to the left as you face the front door of the trailer. There is white skirting on the bottom of the trailer. There is skirting missing from the back left portion of the trailer if you are looking at the front door of the trailer. There is a propane gas tank to the left rear of the residence as well. To the left of the trailer as you face the front door there is a satellite dish on a wooden pole.

(*Id.*). The affidavit then sets out Deputy Mason's reasons for requesting the warrant. It states that in November 2008, Deputy Mason conducted an undercover investigation and learned of the possibility of purchasing large quantities of marihuana in the Clio, Alabama area. (*Id.*). That investigation led to the arrest of Kevin Gardner. After his arrest, Gardner agreed to accompany Deputy Mason to the residence described in the affidavit to show Deputy Mason where he could purchase drugs. (*Id.*). They went to the residence together on November 30, 2008. On December 3, 2008, Deputy Mason and Deputy Covington conducted surveillance on the residence described in the affidavit and observed several

3

individuals enter the residence for a brief time (between 30 and 120 seconds), exit the residence, and then drive away.  (*Id.* at 2).  Deputy Mason, relying on his eight years of narcotics work, stated in the affidavit that such activity was consistent with drug transactions. (*Id.*).

Deputy Mason's affidavit also states that in the two days after conducting the surveillance, he spoke separately with two confidential informants who had previously provided information that led to the recovery of narcotics and several arrests for drug offenses.  (*Id.*).  The first informant "told Deputy Mason that he is familiar with that trailer and that there are large quantities of drugs being sold from that location." (*Id.*). The second informant accompanied Deputy Mason to the residence described in the affidavit.  This informant "advised Deputy Mason that he was familiar with that subject, whom he identified as Adrian Johnson, and that Johnson sold large quantities of marihuana and cocaine from that residence."  (*Id.*).

On December 5, 2008, Judge Smithart issued a warrant authorizing the search and seizure of drugs and drug-related materials at the residence described in the affidavit.  (Doc. #60-1).  On or around December 5, 2008, Deputies Mason, Covington, Ingram, and Benefield executed the warrant.  There is no allegation that any deputy other than Deputy Mason applied for or otherwise possessed the warrant.  After arriving at the residence, and without knocking on the door, the officers conducted a "dynamic entry" in which they forced their way into the Plaintiffs' residence.  (Doc. #50, 6).

Plaintiffs Angela Brown, Marcus Brown, T.B., and Z.W. were at home when the

4

deputies entered.  After entering, the deputies physically forced the Plaintiffs to the floor with firearms drawn, handcuffed them, and arrested them.  (*Id*. at 7).  The Plaintiffs allege that they were treated "roughly" while being seized and handcuffed.  (*Id*.).  As this was happening, Marcus and Angela Brown told the deputies they were in the wrong residence (presumably after the deputies showed them the warrant).  (*Id*. at 6).  According to the Plaintiffs, the residence the deputies had entered was number 20 Doster Spur Road – not number 127 as indicated in the warrant.  (*Id*. at 6).  The deputies told Angela Brown to telephone Adrian Johnson – Angela Brown's brother who also lived on  Doster Spur Road – so that he would come to the Plaintiffs' residence.  (*Id*. at 7).  Johnson was handcuffed when he arrived. (Doc. #50, 7).

The deputies then searched the residence.  They searched the kitchen cabinets, refrigerator, freezer, television encasement, and other rooms in the residence.  (*Id*. at 6).  The deputies also seized items from the home including a four-wheeler vehicle, computer, printer, paper shredder, and other personal items.  (*Id*.).  The Plaintiffs allege that they suffered extensive property damage as a result of the deputies' actions.  (*Id*. at 8).

After the search, Plaintiffs Angela and Marcus Brown were arrested and charged with crimes that are not specified in the complaint.  After being charged, Angela Brown was imprisoned from December 5, 2008 until January 7, 2009.  (*Id*. at 7).  Marcus Brown was imprisoned from December 5, 2008 until February 12, 2009.  (*Id*.).  The charges against both Angela and Marcus were dismissed.  (Doc. #50 at 7).

On September 22, 2009, the Plaintiffs filed a complaint against the Defendants in their

5

individual capacities. (Doc. #50). The complaint contains seven counts. Counts one through four allege civil rights violations under 42 U.S.C. § 1983. Counts five through seven allege violations of Alabama law. The Plaintiffs seek a variety of remedies, including: (1) a declaratory judgment that the policies and practices of the deputies are unlawful and violate the Fourth Amendment; (2) an injunction against further violations of the Plaintiffs' rights by the Defendants; (3) compensatory damages; (4) punitive damages; and (5) costs, including attorneys' fees and other relief that the Court may deem just and proper. (*Id.* at 14). After the Plaintiffs filed two amended complaints, the Defendants filed a joint motion to dismiss all of the claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (Doc. #53). The motion to dismiss has been fully briefed and is ripe for decision.

## II. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over the Plaintiffs' claims pursuant to 42 U.S.C. 1983, 28 U.S.C. § 1331, and 28 U.S.C. § 1367. The parties do not contest personal jurisdiction. Under 28 U.S.C. § 1391(b), venue is appropriate in this district because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. When considering a defendant's motion to dismiss, a district court will accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff.

*See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). If the complaint contains legal conclusions, these conclusions must be supported by factual allegations. *Randall v. Scott*, No. 09-12862, 2010 WL 2595585, at * 7 (11th Cir. June 30, 2010). A district court then examines the factual allegations to see if they "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etailed factual allegations" are not required, but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action is required." *Twombly*, 550 U.S. at 555. Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Id.*

In response to the Plaintiffs' complaint, all of the Defendants in this case have raised a qualified immunity defense. Until recently, section 1983 claims in the Eleventh Circuit were subject to a heightened pleading standard when the defendant is an individual to whom the qualified immunity defense is available. *See Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1233 (11th Cir. 2010) (stating that this Circuit "has tightened the application of Rule 8 in section 1983 cases where qualified immunity is at issue . . . ."). The heightened pleading standard required plaintiffs to allege the relevant facts with some specificity to survive a motion to dismiss. *See Danley v. Allen*, 540 F.3d 1298, 1314 (11th Cir. 2008). But this is no longer the law in the Eleventh Circuit. Recently, the Eleventh Circuit held that "[a]fter

7

*Iqbal*, it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." *Randall*, 2010 WL 2595585, at * 7-8 (referring to *Danley v. Allen* and stating that *Iqbal* effectively overturned it). As a result, only the pleading standards of *Twombly* and *Iqbal* govern the analysis of the Plaintiffs' pleadings.

## IV. DISCUSSION

The Plaintiffs allege violations of their constitutional rights under the Fourth Amendment. In response to these allegations, the Defendants have raised the affirmative defense of qualified immunity. Qualified immunity offers complete protection from liability for government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The affirmative defense of qualified immunity should be applied "at the earliest possible stage of litigation because the defense is immunity from suit and not from damages only." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001). Nevertheless, the Court is mindful that "when qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Pearson v. Callahan*, 129 S. Ct. 808, 819-20 (2009).

The qualified immunity analysis has three steps. First, the defendant must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988). "Once the defendant

establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The plaintiff does this by showing that the public official violated a clearly established constitutional right. Before the Supreme Court's decision in *Pearson*, federal courts were required to follow a rigid two-step process for this portion of the qualified immunity analysis. The first step required courts to determine whether the plaintiff's allegations, taken as true, established a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If a constitutional right would have been violated under the plaintiff's version of the facts, the next step required courts "to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. However, in *Pearson*, the Supreme Court acknowledged that the "two-step inquiry 'is an uncomfortable exercise where . . . the answer [to] whether there was a violation may depend on a kaleidoscope of facts not yet fully developed.'" *Pearson*, 129 S. Ct. at 819-20 (quoting *Dirrane v. Brookline Police Dep't.*, 315 F.3d 65, 69-70 (1st Cir. 2002)). As a result, the Supreme Court held that rigid adherence to the sequence set out in *Saucier* is no longer required and a court may now properly begin by examining whether the right was "clearly established" at the time of the relevant conduct. *Id.* at 818.

In this case, the first step of the qualified immunity analysis is satisfied because the Plaintiffs concede that the "Defendants were acting within the course and scope of their discretionary authority in their conduct toward Plaintiffs." (Doc. #60, 9). As for the next step, the more flexible approach available to the Court after *Pearson* is applicable to the

present case because the Court is faced with a motion to dismiss and a factual record that has not been fully developed through discovery. Therefore, the Court will look first to whether the right the Defendants' are alleged to have violated was clearly established before determining whether a constitutional violation occurred.

### A. Count I - Excessive Force

#### 1. Was there a clearly established right?

In Count I of the complaint, Plaintiffs Angela and Marcus Brown allege that the Defendants used unreasonable force during the search of the Plaintiffs' residence. These Plaintiffs claim that they had a clearly established right to be free from the use of unreasonable force.

As an initial matter, whether or not a right is clearly established "depends substantially upon the level of generality at which the relevant legal rule is to be identified." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). For this reason the Supreme Court requires that the right be identified in a sense that is relevant to the case being decided. *Id.* at 640 (stating that the right an "official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense."). Thus, for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* This does not require that the conduct at issue must have been previously held unlawful for a plaintiff to prevail. As the Supreme Court has recognized, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 740. Instead, the

10

question is whether the law at the time of the relevant conduct gave the defendants fair warning that their alleged conduct was unconstitutional.  *Id.*

The Eleventh Circuit recognizes three ways that a right may be clearly established for qualified immunity purposes: (1) case law with indistinguishable facts clearly establishes the constitutional right, (2) a broad statement of principle within the Constitution, statute, or case law clearly establishes the constitutional right, or (3) the official's conduct is "so egregious that a constitutional right was clearly violated, even in the total absence of case law."  *See Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th Cir. 2009).

In this case, there is a broad statement of principle regarding the Plaintiffs' rights to be free from excessive or unreasonable force. The Eleventh Circuit has held that "[t]he Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."  *Lee*, 284 F.3d at 1197 (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)).  Whether the use of force is reasonable depends on the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of law enforcement officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."  *Graham v. O'Connor*, 490 U.S. 386, 396 (1989).

 In this case, the Court's ability to tailor this right to the facts of this case is limited by the Plaintiffs' sparse factual pleadings.  For example, the complaint does not indicate why the Plaintiffs were arrested.  Moreover, there is no indication in the complaint that the Plaintiffs posed a threat to law enforcement or that the Plaintiffs were resisting arrest or

attempting to flee.  As to the severity of the crime at issue, the Defendants had a warrant to search the residence for narcotics and narcotics-related materials, but that fact is inconclusive with respect to the duration and the amount of force the Defendants were entitled to use to control the Plaintiffs.

Assuming, without now deciding, that the search warrant was valid, the Defendants were not prohibited from applying reasonable force to control the situation during the search. *See Michigan v. Summers*, 452 U.S. 692, 704-05 (1981).  While the complaint does not indicate exactly how much force was applied, it does allege the use of unreasonable force and rough handling.  (Doc. #50, 7, 9).  Despite the sparse pleadings, under the circumstances of this case the Court is satisfied that the Plaintiffs had a clearly established right to be free from excessive force and rough handling, which, upon further development of the factual record, may later be proved to have been excessive.  The Court now turns to whether the Plaintiffs have alleged specific facts, which if true, would violate this clearly established right.

### 2. Have the Plaintiffs alleged a constitutional violation?

It is not unconstitutional for a law enforcement officer to use a reasonable amount of force to detain individuals during a valid search of a residence.  *See Summers*, 452 U.S. at 704-05 (holding that officers executing a search warrant for contraband have the authority "to detain the occupants of the premises while a proper search is conducted."); *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005) (holding that inherent in the authorization "to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention.").

12

The Plaintiffs also allege that at the time of the search the Defendants lacked probable cause to believe that the Defendants were engaged in illegal drug-related activity and therefore any amount of force applied against them was unconstitutional.  (Doc. #50, 9). Usually, when a plaintiff claims unlawful arrest and excessive force, and the excessive force claim is based solely on allegations that the arresting officer lacked the power to make an arrest, the excessive force claim is considered to be derivative of, and subsumed within, the unlawful arrest claim.  *See Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006).  At this point in the analysis, however, the Court assumes, without deciding, that there was probable cause to search, and that the deputies were therefore authorized to use some reasonable amount of force to detain the Plaintiffs.  Thus, the Court views the excessive force claim independent of the unlawful arrest claim in Count IV.  Even assuming that the officers were authorized to use some force, the facts alleged are sufficient for this Court to draw a reasonable inference that there was a constitutional violation.  The Plaintiffs allege that the deputies used unreasonable force when they forced Angela and Marcus Brown to the ground at gunpoint. (*Id.*).  Elsewhere in the complaint the Plaintiffs allege that they were handled roughly when the Defendants handcuffed them.  (*Id.* at 7).  While it is unclear from the complaint how much force the Defendants actually applied, the facts alleged must be taken as true and construed in the Plaintiffs' favor.  Proceeding in this manner, the complaint states a claim to relief that is plausible on its face.  As a result, the Defendants are not entitled to qualified immunity on the claim of excessive force at this stage of the case and the motion to dismiss Count I is due to be denied.

13

**B. Count II - Unlawful Search and Seizure**

    **1.  Was the right clearly established?**

In Count II of the complaint, the Plaintiffs claim that the Defendants conducted an unlawful search of their residence and that their right to be free from unlawful searches and seizures was clearly established at the time of the search.  The Defendants argue that they are entitled to qualified immunity.

The warrant requirement of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. amend. IV.  In a qualified immunity case that turns on the presence or absence of probable cause, an official will be entitled to qualified immunity if either actual or arguable probable cause existed.  *See Lee*, 284 F.3d at 1195.  "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence in a particular location." *United States v. Brunbridge*, 170 F.3d 1350 (11th Cir. 1999).  Arguable probable cause exists when "an officer could have believed that probable cause existed, in light of the information the officer possessed." *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997).

The Plaintiffs argue that there was a broad statement of principle clearly establishing the right to be free from the Defendants' search and seizure.  (Doc. #60, 24-25)  They also argue that the Defendants' conduct was so egregious that a constitutional right was clearly

violated, even in the absence of case law.  (Doc. #60, 25).[2]

The Court is mindful of the Supreme Court's caution that the clearly established right must be drawn in a particularized and relevant sense for any given case.  *Anderson*, 483 U.S. at 640.  The standard for a clearly established right requires that a reasonable official would understand that what he is doing violates that right.  *Id.* In the context of a search, the clearly established right must be anchored to the Supreme Court's "objective legal reasonableness" standard by considering the information the officers possessed.  *Id.* Thus, this Court must decide whether it was clearly established that the circumstances with which the Defendants were confronted did not constitute at least arguable probable cause to search the Plaintiffs' residence. If this is not clearly established, then the Defendants are entitled to qualified immunity at this stage of the case.

The Plaintiffs argue that the Defendants violated their clearly established right "to be free from unlawful searches and seizures."  (Doc. #50, 10).  Later the Plaintiffs say that the question at issue is whether it was clearly established "that a search of an individual's residence with an invalid search warrant, i.e., lacking probable cause and location particularity, was unconstitutional."  (Doc. #60, 24).  The Court disagrees with the Plaintiffs for two reasons.  First, the Court disagrees with the Plaintiff's characterization of the clearly established right.  The Plaintiffs have stated the right too generally to be properly applied in

---

[2]  The Court notes that the Plaintiffs do not argue that case law with indistinguishable facts clearly establishes the constitutional right at issue here.  *See Lewis*, 561 F.3d at 1291-92.

15

this case.  No one would seriously dispute that the Plaintiffs had the right to be free from unlawful searches and seizures. But the objective, and appropriate, question is whether a reasonable deputy could have believed the search was lawful in light of the clearly established law and the information he possessed at the time of the relevant conduct. *See Anderson*, 483 U.S. at 641.

The Plaintiffs direct this Court to the Supreme Court's decision in *Steagald v. United States*, 451 U.S. 204 (1981) as support for their argument that the Plaintiffs' rights were clearly established.  (Doc. #50, 7-8).  That case involved law enforcement officers who entered Gary Steagald's home to arrest Ricky Lyons.  *See Steagald*, 451 U.S. at 206. The officers did not have a search warrant when they entered Steagald's home.  *Id.* The Supreme Court held that in the absence of  consent or exigent circumstances, the officers violated the Fourth Amendment when they entered Steagald's home to search for Lyons without a search warrant.  *Id.* at 216.  *Steagald* is easily distinguished from the case before the Court because the deputies in this case were executing a search warrant and therefore had authority to enter the residence described in the affidavit.  As a result, no exigent circumstance or consent was required to enter and search the Plaintiffs' residence.  The right recognized by the Supreme Court in *Steagald* is not a right at issue in this case.

The Plaintiffs also point this Court to several cases standing for the proposition that the Fourth Amendment protects an individual's right to be free from unreasonable government intrusions into his home.  (Doc. #60, 24-25) (citing cases).  While that broad statement of principle may be a clearly established constitutional right, it is not the right at

16

issue in this case either.  The right at issue in this case is more particularized – whether a reasonable deputy could have believed that searching the Plaintiffs' residence was lawful in light of the clearly established law and the information he possessed at the time of the relevant conduct.  The Plaintiffs have not pointed to any case of the Supreme Court, the Eleventh Circuit, or the Supreme Court of Alabama which had already decided that the search of a residence is unconstitutional where the residence was (1) identified by three informants as the location of drug activity; (2) subject to surveillance and believed to be the location of drug activity by a deputy with eight years of narcotics enforcement experience; and (3) the subject of a search warrant signed by an Alabama circuit court judge. *See Willingham v. Loughnan*, 321 F.3d 1299, 1304 (11th Cir. 2003) (looking to the United States Supreme Court, the Eleventh Circuit, and the Supreme Court of Florida for cases with similar facts when determining whether a right was clearly established).  Nor have the Plaintiffs pointed this Court to any case that approximates those facts.  Thus, the Plaintiffs have not shown that there was a broad statement of principle in case law that clearly established the constitutional right at the time of the search.

Second, in light of the undisputed information in the affidavit, the Court cannot say that the deputies acted egregiously in deciding to apply for and execute the search warrant. According to the affidavit, Deputy Mason had conducted surveillance at the residence described in the affidavit after being led there by an informant and told that drugs were sold from the residence.  Based on Deputy Mason's observations during the surveillance and his experience as a law enforcement officer, he believed that drug-related activity was occurring

there.  In addition, a second confidential informant accompanied Deputy Mason to the location and indicated that drugs were sold from the residence.  A third informant also said drugs were sold from the residence but did not accompany Deputy Mason to the residence. In the total absence of case law to the contrary, it was not objectively egregious behavior for the deputies to believe that they had probable cause to obtain and execute a search warrant for the residence described in the affidavit.

Accordingly, any right that the deputies may have violated by obtaining and executing the search warrant was not clearly established at the time the warrant was issued and executed.  Because the Plaintiffs have failed to establish a clearly established right, the Court need not proceed to the final step of the qualified immunity analysis to decide whether the Plaintiffs have alleged a constitutional violation.  Consequently, the motion to dismiss Count II is due to be granted.

The Plaintiffs also challenge the validity of the search warrant by claiming that it was not supported by probable cause and that it failed to particularly describe the place to be searched.  Although it is not necessary to the disposition of Count II, the Court finds that the search warrant in this case was valid.

The warrant requirement of the Fourth Amendment provides "no Warrants shall issue, but upon probable cause," and that a warrant must "particularly [describe] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  When determining whether a supporting affidavit establishes probable cause, the affidavit must be examined in light of the totality of the circumstances presented.  *See Illinois v. Gates*, 462 U.S. 213, 230

18

(1983).  For a search warrant, the "affidavit must contain 'sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched.'" *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (quoting *United States v. Pigrum*, 922 F.2d 249, 252-53 (5th Cir. 1991)).  The information in the affidavit must also be fresh, meaning that law enforcement's application to search a residence must be temporally related to the events giving rise to the belief that criminal activity is occurring there.  *See id.* (citing *United States v. Zimmerman*, 277 F.3d 426, 427 (3d Cir. 2002)).

If the affidavit contains information provided by a confidential informant, a court should consider the informant's veracity, reliability, and basis of knowledge.  *See Gates*, 462 U.S. at 230.  One way to test reliability and veracity is to examine the informant's "track record" of providing reliable information in the past.  *See United States v. Ridolf*, 76 F. Supp. 2d 1305, 1308-09 (M.D. Ala. 1999) (Albritton, C.J.).  Another way is for police officers to corroborate the information.  *Id.*  The Eleventh Circuit recognizes that "[c]orroboration by another person is a strong ground for crediting an informant's story, even if that other person is not named."  *United States v. Farese*, 612 F.2d 1376, 1379, n. 4 (5th Cir. 1980).[3]  A reviewing court should also give great deference to a neutral magistrate's determination of probable cause.  *See United States v. Leon*, 468 U.S. 897, 914 (1984).

The Court finds that the affidavit contains sufficient indicia of probable cause to

---

[3]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit cases submitted or decided prior to October 1, 1981.

support the warrant.  According to the affidavit, an informant, now known to be Kevin Gardner, told Deputy Mason where Gardner could "get four pounds of marihuana . . . ." (Doc. #60-2).  Gardner then led Deputy Mason to the residence described in the affidavit. Deputies Mason and Covington later conducted surveillance on the residence described in the affidavit.  (*Id.*).  Deputy Mason's observations during that surveillance led him to believe that certain activity at the house was drug related.  (*Id.*).  Deputy Mason then separately interviewed two confidential informants who had provided reliable information in the past. (Doc. #60-2, 2).  The first informant told Deputy Mason that he was familiar with the residence and "that there are large quantities of drugs being sold from that location." (*Id.*). This information was corroborated by the second informant who accompanied Deputy Mason to the Plaintiffs' residence and informed Deputy Mason that Adrian Johnson sold large quantities of marihuana and cocaine from that residence. (*Id.*);  *see Farese*, 612 F.2d 1376, 1379.  Deputy Mason then submitted an affidavit to Alabama Circuit Court Judge Smithart who determined there was probable cause and issued a search warrant.  Viewing these circumstances in their totality, the Court finds that there was probable cause to support the search warrant.

As for particularity, "[t]he warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." *United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986). The warrant must "describe the premises in such a way that the searching officer may with reasonable effort ascertain and identify the place

intended." *Id.* (citations and internal quotations omitted).

In cases where warrants have contained factual errors, courts have considered other factors when determining whether a warrant was valid.  For example, in a case where a search warrant did not correctly describe the entrance to the location to be searched, the Eleventh Circuit considered it significant that "[t]he agent conducting the search had been to the premises before and that he had no doubt which door gave access to" the premises. *United States v. Weinstein*, 762 F.2d 1522, 1532-33 (11th Cir. 1985).  In a case where the warrant incorrectly stated the house number and street name, the Eleventh Circuit considered it significant that an officer with personal knowledge of the place to be searched pointed out the correct apartment to one of the officers executing the search warrant.  *See Burke*, 784 F.2d at 1093; *see also United States v. Figueroa*, 720 F.2d 1239, 1243 n. 5 (11th Cir.1983) (stating that an incorrect address in the warrant was "inconsequential in light of a clear description of the name of the building and its physical appearance.").

The warrant in this case begins by describing the residence to be searched as "possibly" 127 Doster Spur Road.  It then provides directions to the residence, including a statement that the residence is the last house on the right as you travel down Doster Spur Road away from Doster Road.  The warrant then provides a detailed physical description of the characteristics of the residence including its size, color, and the presence and location of the air conditioning unit, propane tank, satellite dish, and front porch. The Plaintiffs contend that the warrant did not describe the residence with sufficiently particularity because the house number in the warrant did not match the house number of the residence that was

21

searched.  The Plaintiffs also contend that the description of the residence to be searched did not sufficiently distinguish it from other houses in the neighborhood.

Despite the Plaintiffs' contentions, the Court is satisfied that the alleged inaccuracies and ambiguities in the warrant did not affect the deputies' ability to identify the residence to be searched.  In addition to the detailed physical description, it is significant that at least two of the deputies executing the search warrant had first-hand knowledge of the residence to be searched.  According to the affidavit, Deputy Mason had been there twice – once to conduct surveillance with Deputy Covington and once accompanied by a confidential informant who indicated that drugs were sold from the Plaintiffs' residence.  This personal knowledge weighs heavily in favor of the deputies' ability to correctly locate the residence described in the search warrant.  Further, while the warrant may have described physical characteristics that were shared by other houses in the neighborhood, there is no allegation that the residences were so similar that an officer with prior knowledge of the premises could not distinguish them.  Therefore, the search warrant satisfied the Fourth Amendment's particularity requirement.

Because the warrant satisfies both the probable cause and particularity requirements of the Fourth Amendment, the warrant was valid.

### C. Count III - Illegal Entry

The Plaintiffs do not cite, and the Court is not aware of, any authority for the existence of "illegal entry" into a private residence as a Fourth Amendment violation separate from a claim for unreasonable search and seizure. *See, e.g.*, *Lenz v. Winburn*, 51 F.3d 1540, 1551

(11th Cir.1995) (treating a claim for "entry" into a house as a claim involving a "search").

Any relief the Plaintiffs are due for the Defendants' conduct in entering the Plaintiffs' property or searching their home and belongings will flow from Count II, and Count III adds nothing to the complaint. Accordingly, the motion to dismiss Count III is due to be granted. *See Lewis v. Blue*, No. 2:09-CV-862-WKW, 2010 WL 730210, *3 (M.D. Ala. March 3, 2010) (Watkins, J.).

### D.  Count IV - False Arrest and Malicious Prosecution

Count IV of the complaint alleges that the Defendants violated the civil rights of Plaintiffs Angela and Marcus Brown because the Defendants falsely arrested and maliciously prosecuted them.  The Court addresses these claims separately.

#### 1. False Arrest

The Plaintiffs' claim for false arrest states that the "Defendants commenced [a] false arrest  . . . absent probable cause." (Doc. #50, 12).  The Fourth Amendment prohibits "unreasonable . . . seizures."  U.S. Const. amend. IV.  An arrest is a seizure and therefore must be reasonable to be constitutional.  *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).  An arrest is reasonable if it is supported by probable cause.  *Id.* "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime."  *Id.*  In the context of qualified immunity, the defendant will be entitled to qualified immunity if the arrest was supported by arguable probable cause.  The standard  for  arguable  probable  cause  is  whether  "reasonable  officers  in  the  same

circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest." *Lee*, 284 F.3d at 1195 (internal quotation marks omitted). "Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime and the operative fact pattern." *Skop*, 485 F.3d at 1137-38.

Having determined in Section IV.B.1 of this Order that the search warrant was valid, the Plaintiffs' claim for false arrest cannot rest solely on their initial detention during the search because the deputies were authorized to detain the Plaintiffs while searching the residence. *See Summers*, 452 U.S. at 704-05. Instead, the false arrest claim must rest on circumstances that occurred after the Defendants searched the house and their limited authority to detain the occupants during the search had expired.

The complaint does not indicate why Plaintiffs Angela and Marcus Brown were arrested and taken to jail after the search.[4] As a result, there is no indication in the complaint that the defendants were authorized to continue to detain the plaintiffs after searching the residence. The Court is mindful that the factual record of this case is undeveloped at this stage of the proceedings. Angela and Marcus Brown have pled that they were arrested absent probable cause, which, if true, would amount to a constitutional violation. In their motion

---

[4] In their Memorandum Brief in Support of Defendants' Joint Motion to Dismiss, the Defendants state that the Plaintiffs were arrested because the deputies discovered "three pounds of marijuana and a gun" during their search. (Doc. #54, 26). At this motion to dismiss stage, this statement has not entered the Court's analysis because it is not mentioned in the Plaintiffs' pleadings.

to dismiss, the Defendants argue that the claim of false arrest is insufficiently pled and that even if there was a violation of the Plaintiffs' constitutional rights, those rights were not clearly established at the time of the arrest.  The Court finds that the claim for false arrest is properly pled even on the Plaintiffs' relatively thin pleadings. There is sufficient information in the complaint for the "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Further, the right to be free from arrest without probable cause was clearly established at the time.  *Davis v. Williams*, 451 F.3d 759, 764, n. 8 (11th Cir. 2005) ("it is clearly established that an arrest made without probable cause violates the Fourth Amendment").  As a result, the motion to dismiss the claim for false arrest is due to be denied.

### 2. Malicious Prosecution

Plaintiffs Angela and Marcus Brown also allege that the Defendants commenced a criminal prosecution against them without probable cause and that the prosecution was initiated "maliciously or under such circumstances as to imply malice."  (Doc. #50, 12).  These two plaintiffs further allege that the criminal prosecution was terminated in the Plaintiffs' favor and that the Plaintiffs suffered damages as a result of the prosecution.  (Doc. #50, 11-12).  The Defendants argue that (1) the pleadings are insufficient; (2) the allegations of lack of probable cause and malice are conclusory; and (3) that the pleadings fail to put the Defendants on notice of the claims against them.  (Doc. #54, 25-30).

In the Eleventh Circuit, malicious prosecution is a viable constitutional tort recognizable under § 1983. *See Uboh v. Reno*, 141 F.3d 1000, 1002-04 (11th Cir. 1998). To

establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures. *See Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir.2003), *cert. denied*, 540 U.S. 879 (2003). "[T]he constituent elements of the common law tort of malicious prosecution [include]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* at 881-82 (observing that these are the same elements required under Alabama law for the tort of malicious prosecution).

The Court has already established that the Plaintiffs' pleadings have sufficiently alleged the absence of probable cause to arrest the Plaintiffs. *See supra* Section IV.D.1. The additional question that must be answered for a claim of malicious prosecution is whether the Plaintiffs have sufficiently alleged malice. The Court is persuaded that "[m]alice, for purposes of a malicious prosecution action, may be inferred from want of probable cause." *Eubanks v. Hall*, 628 So. 2d 773, 775 (Ala. Civ. App. 1993) (citation omitted); *see also Diaz-Martinez v. Miami-Dade County*, No. 07-20914-CIV-Lenard/Garber, 2009 WL 2970471, at *10 (S.D. Fla. June 9, 2009); *Willis v. Parker*, 814 So. 2d 857, 864 (Ala. 2001) (citation omitted) ("malice is an inference of fact" and may be "inferred from an absence of probable cause unless facts disclose that the defendant in a malicious prosecution action was acting in good faith.").

While the inference of malice may be rebutted by showing that the Defendants acted

26

in good faith, *Willis*, 814 So. 2d at 864, at this motion to dismiss stage, the Court has not considered this defense.  In this case, the Plaintiffs' allegation that the prosecution was commenced absent probable cause allows the court to draw the reasonable inference that the prosecution was malicious and as a result that the Defendants are liable for the misconduct alleged.

For purposes of the two-step qualified immunity analysis, in the Eleventh Circuit it is clearly established that individuals have the right to be free from a prosecution commenced with malice and without probable cause.  *See Uboh*, 141 F.3d at 1002-04.  It is also clearly established in Alabama that malice may be inferred from the absence of probable cause. *See Willis*, 814 So. 2d at 864. Having pled that the Defendants commenced a criminal prosecution absent probable cause and with malice, the Plaintiffs have sufficiently alleged a constitutional violation.

The Court rejects the Defendants' argument that the pleadings are ambiguous and thus insufficient to put the Defendants on notice of the claims against them.  As the Defendants recognized, the heading of Count IV refers to Angela and Marcus Brown and excludes the other minor plaintiffs.  (Doc. #50, 11-12).  This is sufficiently specific for the Court to discern which of the four plaintiffs are asserting a claim of malicious prosecution.  Further, the Defendants have not demonstrated to the Court why any of the Defendants are incapable of being directly responsible for the malicious prosecution.  Accordingly, the motion to dismiss the claim for malicious prosecution is due to be denied.

### E. Counts V through VII - State Tort Claims

27

In Counts V through VII the Plaintiffs allege state tort claims of trespass to property, assault and battery, and invasion of privacy against the Defendants in their individual capacities. The Defendants argue that they are entitled to absolute immunity under Article I, § 14, Alabama Constitution 1901. In the Plaintiffs' motion for leave to file a sur-reply, the Plaintiffs conceded that the Defendants are entitled to absolute immunity on the Plaintiffs' state law claims. (Doc. #63-1, 2). Nevertheless, the Defendants opposed that motion and the Court ultimately denied it. (Doc. #64; Doc. #66). Consequently, the concession was not well-taken at the time it was made and this Court will address the Plaintiffs' state law claims.

Article I, § 14, Alabama Constitution 1901 provides that "the State of Alabama shall never be made a defendant in any court of law or equity." In Alabama, this is known as "State" or "absolute" immunity. *See Ex parte Davis*, 930 So. 2d 497, 500 (Ala. 2005). A claim for monetary damages made against a constitutional officer in the officer's individual capacity is barred by State immunity when the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment. *See Davis*, 930 So. 2d at 500-01. In Alabama, a sheriff is an executive officer of the state and, with limited exceptions[5], is entitled to State immunity under the Alabama Constitution. *See Boshell v.*

---

[5]   A sheriff or deputy is not immune from a suit brought "(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the Statute." *Smith v. Tillman*, 958 So. 2d 333, 338 (2006) (quoting Parker *v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987)).

*Walker County Sheriff*, 598 So. 2d 843, 844 (Ala. 1992);  *see also  McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir.1996).  Moreover, in Alabama, a sheriff's deputy is immune from suit to the same extent as the sheriff.  *See Alexander v. Hatfield*, 652 So.2d 1142, 1144 (Ala.1994).

In this case, the Defendants were acting within the scope of their official duties when they applied for and executed the warrant.  The Plaintiffs argue that the Defendants were not performing a discretionary function and thus should not be entitled to immunity.[6]  But this argument reflects an incorrect interpretation of Alabama law.  Because State immunity is available to the deputies, whether they can be sued turns not on whether they were performing a discretionary function but on whether they were performing duties within the course and scope of their employment.  *See Davis*, 930 So. 2d at 500-01; *see also Suttles v. Roy*, — So. 3d —, 2010 WL 2034827 * 3 (Ala. 2010) (describing the different standards for State immunity and State-agent immunity).  All of the events underlying the state tort claims against the deputies were alleged to have occurred while the Defendants were either seeking the search warrant or executing it.  In fact, the Plaintiffs have conceded that "at all times relevant hereto, Defendants were state actors acting within the line and scope of their duties." (Doc. #50, 7).  Accordingly, the Plaintiffs' claims for monetary damages against the deputies

---

[6] The Court notes the Plaintiffs' seemingly contradictory statements regarding the Defendants' conduct.  In the Plaintiffs' Response in Opposition to Defendants' Second Joint Motion to Dismiss, the Plaintiffs state that "it is undisputed that Defendants were acting within the course and scope of their discretionary authority in their conduct toward Plaintiffs." (Doc. #60, 9).  In that same document, the Plaintiffs state that "Defendants' actions . . . cannot qualify as a 'discretionary public function.'"  (Doc. #60, 27).

are barred by the absolute immunity of Article I, § 14, of the Alabama Constitution of 1901 because the deputies were acting within the line and scope of their employment.

In addition to their claims for monetary damages, the Plaintiffs also seek two forms of equitable relief.  First, they seek a declaratory judgment that the "policies and practices" alleged in the complaint are unlawful and violative of the Fourth Amendment.  (Doc. #50, 14).  Second, they seek an injunction against "Defendants from imposing punishment as against Plaintiffs and further violating Plaintiffs [sic] federally protected rights."  (*Id.*).

In Alabama, declaratory judgments against state officers are only available when the plaintiff seeks "construction of a statute under the Declaratory Judgment Act if the state officer is a necessary party for the construction of the Statute."  *Smith*, 958 So. 2d at 338. That is not the situation in this case and to the extent the complaint contains a claim for a declaratory judgment against the Defendants, the motion to dismiss that claim is due to be granted.

Similarly, in Alabama injunctive relief against a state officer is only available "(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, and (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law."  *Smith*, 958 So. 2d at 338.  The only one of those options that is even potentially applicable to this case is an injunction from acting under a mistaken interpretation of the law.  However, the Plaintiffs have not included any allegations in their complaint that indicate a desire for this type of injunctive relief.  As a result, to the extent the complaint contains a claim for

injunctive relief against the Defendants, the motion to dismiss that claim is due to be granted.

Because the equitable relief that the Plaintiffs seek does not fit any of the exemptions from the deputies' entitlement to sovereign immunity, the motion to dismiss the equitable claims is due to be granted.

## V. CONCLUSION

For the foregoing reasons it is CONSIDERED and ORDERED as follows:

1.  The Defendants' Joint Motion to Dismiss (Doc. #53) is hereby DENIED with respect to Counts I and IV; and

2.  The Defendants' Joint Motion to Dismiss (Doc. #53) is hereby GRANTED with respect to Counts II, III, V, VI, and VII; and

3.  Counts II, III, V, VI, and VII are hereby dismissed with prejudice without leave to amend.

DONE this the 29th day of September, 2010.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE